OPINION
{¶ 1} Defendant, Ein Hisel, appeals from his conviction and sentence for possession of cocaine.
 {¶ 2} On August 6, 2005, at 4:43 p.m., Huber Heights police officer Mike Reckner stopped Defendant's vehicle near *Page 2 
the intersection of State Route 201 and Chambersburg Road for speeding, improper lane change, and "tailgating." While standing near the vehicle and talking with Defendant, Officer Reckner observed either an unopened or an empty beer can and an empty Smirnoff alcoholic beverage carton in plain view on the front passenger floorboard.
 {¶ 3} When Officer Reckner returned to his cruiser and ran Defendant's license and registration, he discovered that the vehicle was registered to Defendant, though Defendant had said the vehicle was his girlfriend's. Officer Reckner returned to the vehicle and discovered that Defendant had attempted to conceal the beer can and liquor carton by placing a coat over them.
 {¶ 4} Because of Defendant's excessive nervousness and his attempt to conceal incriminating articles in the vehicle, Officer Reckner removed Defendant from the vehicle and asked Defendant for permission to search the vehicle. Defendant refused. Officer Reckner then patted Defendant down and placed him in the back of his police cruiser. Defendant was not handcuffed or under arrest at that time.
 {¶ 5} Officer Reckner advised Defendant that he was going to call for a drug detection dog to sniff Defendant's vehicle. Fifteen minutes later, while Officer Reckner was still *Page 3 
filling out Defendant's traffic citations, Officer Harlow, a canine handler, arrived with his drug detection dog.
 {¶ 6} Officer Harlow informed Defendant that he was going to allow the dog to sniff the perimeter of Defendant's vehicle, that the dog reacts aggressively to the odor of drugs, and the dog's aggressive reaction could cause damage to Defendant's vehicle. Officer Harlow then gave Defendant an opportunity to instead tell him if his vehicle contained any drugs. Defendant admitted that there were two marijuana roaches in the ashtray.
 {¶ 7} Based upon Defendant's admission that his vehicle contained drugs, Officers Reckner and Harlow searched Defendant's vehicle and discovered marijuana, cocaine, and methadone pills. Defendant was arrested for possession of those substances.
 {¶ 8} Defendant was indicted on one count of aggravated possession of drugs (methadone), R.C. 2925.11(A), and one count of possession of cocaine, not crack, in an amount less than five grams, R.C. 2925.11(A), both felonies of the fifth degree. Defendant filed a motion to suppress evidence. Following a hearing, the trial court overruled Defendant's motion to suppress.
 {¶ 9} Defendant entered a plea of no contest to the *Page 4 
cocaine possession charge in exchange for the State's dismissal of the aggravated possession of drugs charge. The trial court found Defendant guilty of possessing cocaine and sentenced him to five years of community control sanctions.
 {¶ 10} Defendant has timely appealed to this court, challenging the trial court's decision overruling his motion to suppress the evidence.
FIRST ASSIGNMENT OF ERROR
 {¶ 11} "THE TRIAL COURT'S FINDING WAS NOT SUPPORTED BY COMPETENT CREDIBLE EVIDENCE."
SECOND ASSIGNMENT OF ERROR
 {¶ 12} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN CONCLUDING THAT OFFICER RECKNER HAD PROBABLE CAUSE WHICH ALLOWED HIM TO EXTEND THE TRAFFIC STOP AND TO SEARCH APPELLANT'S VEHICLE."
 {¶ 13} In a motion to suppress, the trial court assumes the role of the trier of fact, and as such is in the best position to resolve questions of fact and evaluate the credibility of the witnesses.State v. Clay (1972), 34 Ohio St.2d 250, 298 N.E.2d 137. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. If we accept those facts as true, we must then independently determine as a matter of law, *Page 5 
without deference to the trial court's legal conclusions, whether they meet the applicable legal standard. State v. Retherford (1994),93 Ohio App.3d 586.
 {¶ 14} Defendant argues that the trial court's finding of fact that Officer Reckner observed either an unopened or an empty beer bottle and a liquor carton in plain view on the front passenger floorboard of Defendant's vehicle is not supported by competent, credible evidence. Defendant cites inconsistencies in Reckner's testimony regarding whether he saw a beer can or beer bottle and whether it was unopened, empty, or was open and had alcohol in it.
 {¶ 15} Defendant additionally argues that Officer Reckner did not have probable cause to search Defendant's vehicle for alcoholic beverages based upon his observation of a beer can/bottle inside the vehicle and knowledge that Defendant was under age twenty-one, and could therefore not lawfully possess alcoholic beverages.
 {¶ 16} The issues Defendant raises do not determine the error he assigns in this appeal. Police did not search Defendant's vehicle for alcohol. Rather, Defendant's vehicle was searched for illegal drugs, not alcohol, and only after Defendant told police that there was marijuana inside his vehicle. Defendant's admission created probable cause to *Page 6 
search Defendant's vehicle for illegal drugs pursuant to the automobile exception to the warrant requirement, State v. Mills (1992),62 Ohio St.3d 357, United States v. Ross (1982), 456 U.S. 798, 102 S.Ct. 2157,72 L.Ed.2d 572. It also gave rise to sufficient probable cause to arrest Defendant for possession of illegal drugs, which would also allow police to search Defendant's vehicle incident to his lawful arrest. New York v.Belton (1981), 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed 2d 768; State v.Swank (Mar. 9. 1994), Miami App. No. 93-CA-21.
 {¶ 17} Defendant does not contest that the initial stop of his vehicle for traffic violations was lawful. Dayton v. Erickson, 76 Ohio St.3d 3,1996-Ohio-431. Defendant does complain, however, that Officer Reckner unlawfully prolonged the traffic stop in order to bring a drug detection dog to the scene. If so, that could undermine the probable cause for the search that yielded the evidence Defendant moved to suppress.
 {¶ 18} Once a traffic citation is issued and the original purpose of the stop is completed, the lawful basis for the detention ceases. If police thereafter seek and obtain consent to search absent some reasonable, articulable suspicion of criminal activity other than the traffic violation, the continued detention and the consent is deemed *Page 7 
involuntary, rendering a search unlawful. State v. Watts, Montgomery App. No. 21982, 2007-Ohio-2411; State v. Retherford (1994),93 Ohio App.3d 586; State v. Robinette, 80 Ohio St.3d 234, 1997-Ohio-343.
 {¶ 19} However, where a consent to search is sought and obtained during the period of time reasonably necessary to process the traffic citation, while a violator is being lawfully detained, the traffic stop and resulting detention is not unlawfully prolonged and the consent is not deemed involuntary or a search unlawful. Watts; State v.Loffer, Montgomery App. No. 19594, 2003-Ohio-4980; State v. Swope (Nov. 9, 1994), Miami App. No. 93CA46.
 {¶ 20} Officer Reckner testified that a traffic stop routinely lasts fifteen minutes, give or take a few minutes. The timeline of events in this case is affirmatively demonstrated by the clock displayed on the "cruiser cam" videotape footage of this traffic stop.
 {¶ 21} Defendant was stopped at 4:43 p.m. for traffic violations. Officer Reckner obtained Defendant's license and registration and returned to his police cruiser where he ran that information. Because Defendant was acting more nervous than normal during a routine traffic stop and had attempted to conceal the alcoholic beverage containers on the floor of the *Page 8 
vehicle by the time Officer Reckner returned, Officer Reckner removed Defendant from the vehicle and asked Defendant for permission to search the vehicle. Defendant refused. At 4:48 p.m., just five minutes after Defendant had been stopped, Officer Reckner informed Defendant that a drug detection dog was being called to the scene to sniff the exterior of Defendant's vehicle.
 {¶ 22} At 5:02 p.m., nineteen minutes into the traffic stop, the drug detection dog arrived on the scene. At that time Officer Reckner was still completing the paperwork for the traffic citations. Officer Harlow, the canine handler, gave Defendant an opportunity to tell him if his vehicle contained drugs before beginning the canine sniff. At 5:03 p.m., twenty minutes into the traffic stop, Defendant told Officers Harlow and Reckner that there were marijuana roaches inside his vehicle in the ashtray. The officers began searching Defendant's vehicle thirty seconds later.
 {¶ 23} The search of Defendant's vehicle occurred just twenty minutes after the initial stop, during the period of time reasonably required to process the traffic violations, and while Officer Reckner was still completing the paperwork for the traffic citations. Thus, the traffic stop was not unlawfully prolonged. Defendant's Fourth Amendment rights *Page 9 
were not violated in this case.
 {¶ 24} The assignments of error are overruled. The judgment of the trial court will be affirmed.
 WOLFF, P.J. And DONOVAN, J., concur. *Page 1